WRIGHT, FINLAY & ZAK, LLP
T. Robert Finlay, Esq., SBN 167280
Nicholas G. Hood, Esq., SBN 238620
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Tel.: (949) 477-5050; Fax: (949) 477-9200
rfinlay@wrightlegal.net; nhood@wrightlegal.net

Attorneys for Defendants, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR AMERICAN HOME MORTGAGE INVESTMENT TRUST 2007-1 (erroneously named herein as "Deutsche Bank National Trust Company, As Indenture Trustee For American Home Mortgage Investment Trust 2008-1"); and HOMEWARD RESIDENTIAL, INC., fka AMERICAN HOME MORTGAGE SERVICING, INC., a Delaware Corporation

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSENTENE B. PURNELL, an individual,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>AMERICAN HOME MORTGAGE CORP. D/B/A AMERICAN BROKERS CONDUIT; AMERICAN HOME MORTGAGE SERVICING, INC.; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR AMERICAN HOME MORTGAGE INVESTMENT TRUST 2008-1; and Does 1-10, inclusive,<br><br>　　　　　　Defendants. | Case No.: CV 11-9624-GW(JEMx)<br><br>*Assigned to the Hon. George H. Wu*<br><br>**NOTICE OF RULING ON DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM FOR RELIEF AND MOTION TO STRIKE**<br><br>Hearing:<br>Date: May 21, 2012<br>Time: 8:30 a.m.<br>Ctrm: 10 (Los Angeles - Spring St.) |

1

1     **PLEASE TAKE NOTICE** that on May 21, 2012, the Honorable George H. Wu issued a tentative ruling for Defendants DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR AMERICAN HOME MORTGAGE INVESTMENT TRUST 2007-1's (erroneously named herein as "Deutsche Bank National Trust Company, As Indenture Trustee For American Home Mortgage Investment Trust 2008-1"); and HOMEWARD RESIDENTIAL, INC., fka AMERICAN HOME MORTGAGE SERVICING, INC., a Delaware Corporation's Motion to Dismiss Second Amended Complaint and Motion to Strike. A true and correct copy of the tentative ruling is attached hereto as Exhibit "A". On July 5, 2012, the Honorable Court ordered that said tentative ruling is the final order of the Court.

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated: July 5, 2012     By:     <u>/s/ Nicholas G. Hood</u>
Nicholas G. Hood, Esq.,
Attorneys for Defendants,
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR AMERICAN HOME MORTGAGE INVESTMENT TRUST 2007-1 and HOMEWARD RESIDENTIAL, INC., fka AMERICAN HOME MORTGAGE SERVICING, INC., a Delaware corporation

# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| **Case No.** | CV 11-9624-GW(JEMx) | **Date** | May 21, 2012 |
| **Title** | *Rosentene B. Purnell v. American Home Mortgage, Corp., et al.* | | |

**Present: The Honorable**   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Pam Batalo | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:            Attorneys Present for Defendants:

       Deborah P. Gutierrez                              Nicholas G. Hood

**PROCEEDINGS:**   DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM FOR RELIEF AND MOTION TO STRIKE (filed 04/02/12)

DEFENDANTS' MOTION TO STRIKE PORTIONS OF SECOND AMENDED COMPLAINT (filed 04/02/12)

---

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Defendants' Motions are **TAKEN UNDER SUBMISSION.** A non-appearance status conference is set for May 31, 2012. Court to issue ruling.

                                                                                        :  .22

                                                            Initials of Preparer   JG

<u>**Rosentene B. Purnell v. American Home Mortgage Corp., et al.**</u>, Case No. CV-11-9624
Tentative Ruling on Motion to Dismiss Second Amended Complaint for Failure to State a Claim
for Relief and Motion to Strike

**I. Background**
    Before the Court is the motion of defendants Deutsche Bank National Trust Company ("Deutsche Bank") as Indenture Trustee for American Home Mortgage Investment Trust 2007-1 (the "Trust"), and American Home Mortgage Servicing, Inc., ("AHMSI") (collectively "Defendants") for an order dismissing plaintiff Rosentene B. Purnell's ("Plaintiff" or "Purnell") second amended complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6), and Defendants' motion for an order striking certain allegations in and exhibits to the SAC pursuant to Fed. R. Civ. P. 12(f). This Court issued a detailed order (the "March 1 Order") in response to Defendants' motion to dismiss or strike portions of the first amended complaint ("FAC") on March 1, 2012. *See* Docket No. 25. Many of the arguments made by the parties here are substantially similar to those made in the parties' briefing for Defendants' first motion to dismiss and/or strike, thus the Court will refer when necessary to the March 1 Order.
    In the SAC, Purnell brings the following claims against American Home Mortgage Corp. d/b/a American Brokers Conduit ("American Mortgage") as the originating lender on her home loan, AHMSI as the mortgage servicer, Deutsche Bank as the purported beneficiary and assignee of her home loan, in the role of trustee for the Trust, and (newly joined in the SAC) Bank of America, N.A. ("Bank of America") as "purported investor and rival claimant": 1) Declaratory Relief (28 U.S.C. §§ 2201, 2202); 2) Quasi Contract; 3) Violation of 15 U.S.C. § 1641(g); 4) Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); 5) Breach of Contract; 6) Violation of Cal. Civ. P. Code § 2924 (Section 2924). *See generally* SAC, Docket No. 26.
    The allegations in the SAC are somewhat different from those pled in the FAC. The relevant factual allegations in the SAC are as follows. On February 2, 2007, Plaintiff executed a promissory note (the "Note") in favor of American Mortgage in the amount of $617,000 secured by a deed of trust ("DOT", attached as Exhibit A to the SAC) for the refinance of real property located at 22150 Needles Street, Chatsworth, California 91311 (the "Subject Property"). SAC ¶ 1, Exh. A. (The DOT, in conjunction with the Note, shall be deemed "the Loan.") The DOT designates American Mortgage as the lender, Fidelity National Title Company as the Trustee, and MERS as the nominee and holder of the beneficial interest in the loan. SAC, Exh. A. Most of Plaintiff's claims, in general, arise out of her allegation that "Deustche [Bank] and Bank of America, both third-party strangers to the original Loan transaction, each claim to hold a current interest in her Loan." SAC ¶ 4.
    Plaintiff alleges that in August 2011, an invalid assignment of the DOT took place. SAC ¶¶ 23-28. On August 2, 2011, an assignment (the "Assignment," attached as Exhibit B to the SAC) of the DOT was recorded, executed by Roberta Wagner on behalf of MERS on *July 26, 2011*, whereby MERS assigned all beneficial interest in the DOT to Deutsche Bank as the trustee for AHMSI. SAC ¶¶ 23-24. Plaintiff alleges that the Assignment is invalid for five reasons: 1) the Assignment does not disclose the principal for whom MERS is acting as agent; 2) MERS

lacked ownership interest in the Note and thus cannot assert itself as the principal; 3) the MERS signatory, Roberta Wagner, lacked corporate authority from MERS to execute the Assignment; 4) Rolanda Wagner was never even an employee of MERS and lacked knowledge of the Assignment; 5) the Assignment was executed in Florida whereas MERS is "based out of" Virginia. For all of these reasons, Plaintiff alleges that the Assignment is invalid and has no legal force. SAC ¶ 25.

Plaintiff next alleges that a substitution of trustee recorded on November 10, 2011 and executed on *July 20, 2011* (the "Substitution of Trustee," attached to the SAC as Exhibit F) is also invalid. SAC ¶¶ 28-35. The Substitution of Trustee substituted Power Default Services, Inc. in place of Deutsche Bank as the trustee under the DOT. Plaintiff alleges that the Substitution of Trustee is invalid for two reasons: 1) because the Assignment was void, Deutsche Bank had no ownership interest in the DOT, and thus no power to execute the Substitution of Trustee, as the terms of the DOT make clear that only the "Lender" can appoint a successor trustee; and 2) even if the Assignment were valid, the Assignment was executed on July 26, 2011, and the Substitution of Trustee was executed on July 20, 2011; therefore, Plaintiff alleges, Deutsche Bank executed the Substitution of Trustee six days before it acquired any interest in the DOT. SAC ¶ 35.

Plaintiff then alleges that the notice of default ("NOD," attached as Exhibit G to the SAC) recorded in August 2011 is invalid. SAC ¶ 36. The NOD is executed by Default Resolution Network "Agent for the Beneficiary By: ServiceLink, its Agent." SAC, Exh. G. Plaintiff alleges that the NOD is invalid because neither Default Resolution nor ServiceLink had authority under the DOT, Assignment and/or Substitution of Trustee to execute it. SAC ¶ 36.

Plaintiff finally alleges that the notice of trustee's sale recorded on November 10, 2011 (the "NOTS," attached as Exhibit H to the SAC) is invalid. SAC ¶ 37. The NOTS was executed by Power Default Services as trustee. SAC, Exh. H. Plaintiff alleges that because the Assignment and subsequent Substitution of Trustee were both invalid, the NOTS is also invalid, as Power Default Services lacked authority to execute the NOTS. SAC ¶ 37.

She goes on to elaborate that she was induced to refinance the Subject Property on February 2, 2007, "in favor of" American Mortgage with the instant loan having a represented teaser-rate of 1% yearly interest that lasted only four weeks and detrimentally jumped to 8% beginning March 1, 2007. SAC ¶ 39. Allegedly, on March 12, 2007, Plaintiff's home was then consumed by fire. SAC ¶ 40. As a result, Plaintiff had to hire contractors over the next 16 months to reconstruct her home, but AHMSI "withheld in escrow" certain insurance proceeds that Plaintiff was entitled to (for reasons not explained in the FAC or directly tied to the home loan at the center of the FAC). *Id.* As a result of AHMSI's purported improper withholding of such funds, Plaintiff was unable to pay her contractors, causing her credit to be negatively affected. *Id.*

On February 1, 2009 Plaintiff alleges that American Servicing offered her a loan modification (the "Modification," attached to the SAC as Exhibit I), which she accepted. SAC ¶ 41. The FAC made no mention of the Modification whatsover. *See generally* FAC, Docket No.12. Plaintiff alleges that there were numerous "inconsistencies" in the Modification. SAC ¶ 41. These alleged inconsistencies included 1) an error in the amount due on the original loan, in that Plaintiff alleges the original loan balance was $617,000 whereas the Modification present the

"current principal balance" as $656,458.76; 2) an additional $11,282.28 of "capitalization" was added to the allegedly erroneous "current principal balance" such that the "new principal balance" is presented in the Modification as $667,741. SAC ¶ 41, Exh. I. Plaintiff alleges that she made monthly payments pursuant to the Modification for two years, which were "incorrectly" applied to the interest instead of the principal. SAC ¶ 41(e). She also "disputes the accuracy of the escrow balance" during the period when she made payments under the Modification. *Id.* These alleged inconsistencies "forced her into default when the amount reset in 2011." SAC ¶ 41(f).

In March 2010, Plaintiff initiated negotiations with AHMSI "to address the issues," but after months of getting the run around from AHMSI agents, her request for further modification was ultimately denied in October 2011. SAC ¶¶ 42-43. On November 29, 2011, Plaintiff was forced to file for bankruptcy to save her home.[1] SAC ¶ 45. At that time and due to her belief that she had been treated unfairly by AHMSI, Plaintiff decided to investigate why her home loan modifications were denied, which revealed (as pled in the SAC)[2] that neither AHMSI nor Deutsche Bank had any authority to collect on or service the loan, or to foreclose on the loan; she also purportedly learned that "Bank of America is a purported owner and purported rival claimant of Plaintiff's Loan. SAC ¶ 46.

On November 4, 2011, after engaging in the above investigation, Plaintiff then sent a qualified written request to AHMSI pursuant to the Real Estate Settlement Procedures Act in order to obtain documentation on who actually owns her home loan, to which AHMSI allegedly failed to "substantively respond." SAC ¶ 47.

Plaintiff does not dispute that she owes money on her debt obligation, but she does dispute the amount owed and implores the Court to help her identify her "true creditor." SAC ¶ 48. She asserts that she has been paying the wrong creditor and that all payments made to the Trust must be disgorged and refunded. SAC ¶ 49. She claims that her credit score has been damaged and that title to her home has been "slandered, clouded and . . . rendered unmarketable," as a result of Defendants' actions. SAC ¶¶ 50-51. Without knowing the identify of her true creditor, Plaintiff avers that she is subject to "double financial jeopardy." SAC ¶¶ 52-53. She avers that she is "ready, willing, and able to unconditionally tender her obligation," and also alleged that she "has a steady income flow and has the ability to a reasonable payment to satisfy her obligation." SAC ¶ 54-55.

By the instant suit, she seeks, *inter alia*, compensatory, special and general damages of at least $5,000,000.00; an order compelling Defendants to remove any instrument that could be construed as a cloud upon the title of the Subject Property; declaratory judgment as to Defendants' rights; an order restraining Defendants from initiating any action against the Subject Property; disgorgement of all amounts "wrongfully taken" plus interest; and attorney's fees and costs. *See generally*, SAC at Prayer for Relief.

---

[1] Neither party has discussed the effect of the bankruptcy upon the case; the Court might ask the parties as to their views on the matter at the hearing.

[2] In the FAC, Plaintiff alleged that her investigation uncovered that her home loan had never been properly securitized and assigned to the Trust and that none of the Defendants has a legally protected interest in her home loan vis-a-vis the Trust because of the purported invalidity of the Assignment.

## II. Legal Standard

Plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 558-59; *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a 12(b)(6) motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The court must construe the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court must also accept as true all reasonable inferences to be drawn from the material allegations in the complaint. *See Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Fed. R. Civ. P. 12(f) allows the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010). "Immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being plead" and "impertinent" matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 974 (*quoting Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). "Scandalous" material has been defined as "allegations that cast a cruelly derogatory light on a party or other person." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). However, if a Rule 12(f) argument is simply that a form of relief is "precluded as a matter of law," the proper motion is not a Rule 12(f) motion, but a Rule 12(b)(6) or Rule 56 motion. *See Whittlestone*, 618 F.3d at 974-75.

## III. Analysis
### A. Request for Judicial Notice

Defendants request that the Court take judicial notice of the following eight documents: 1) the DOT; 2) the Assignment; 3) the NOD; 4) the Substitution of Trustee; 5) the NOTS; 6) an Amended Statement by Foreign Corporation filed on April 23, 2008, in the office of the Secretary of State of the State of California; 7) a Notice of Bankruptcy Case filed on August 6, 2007, in the United States Bankruptcy Court District of Delaware; and 8) an Amended Statement by Foreign Corporation filed on June 3, 2008, in the office of the Secretary of State of the State of California.

Under Fed. R. Evid. 201, the court can take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Moreover, a district court "may presume that public records are authentic and trustworthy." *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999). To the extent the court can *only* consider the above documents through judicial notice (and cannot otherwise consider them through, *inter alia*, the incorporation by reference doctrine, or because they are attached as exhibits to the SAC), this Court would take judicial notice of the filing dates of the document, which are not subject to reasonable dispute. However, the Court would not take judicial notice of the contents of such documents. Again, if the Court can and needs to consider the contents of the above documents through other doctrines, it will do so as necessary. The Court also notes that Plaintiff did not file any formal opposition to the request for judicial notice.

### B. Motion to Dismiss
#### 1. Declaratory Relief

Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." While the "object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues [pleaded elsewhere]," the "Declaratory Judgment Act gives district courts discretion to exercise it jurisdiction over [such] a claim...." *Lai v. Quality Loan Serv. Corp.*, No. 10-2308, 2010 U.S. Dist. LEXIS 97121, at *7 (C.D. Cal. Aug. 26, 2010).

In the FAC, Plaintiff's declaratory relief claim largely focused on the allegedly improper securitization of her loan into the Trust. The March 1 Order dismissed the declaratory relief claim, citing to authority indicating that such allegations do not state a claim for relief. However, the March 1 Order granted Plaintiff leave to amend. Now, Plaintiff seeks declaratory relief as to 1) whether it is Deutsche Bank or Bank of America who have an interest in the DOT, 2) whether the Assignment was valid, and 3) "on whose behalf [AMHSI] is purporting to service the loan." SAC ¶ 59. She alleges that the "MERS website identifies Bank of America as current investor of Plaintiff's loan." SAC ¶¶ 62, 66. She alleges that declaratory relief is necessary because without such relief she will be denied the opportunity to negotiate with the proper party as to her Loan, she will not be able to propound discovery on the proper parties, and she will be unable to discover the "true amount she still owes minus any illegal costs, fees and charges." SAC ¶ 67.

As currently pled, Plaintiff's declaratory relief claim necessarily rests on one of two allegations: 1) Bank of America has an interest in the Loan, and/or 2) the Assignment was invalid. As to the allegations regarding Bank of America, Plaintiff's sole allegation in that regard is that the MERS website, at an undisclosed time and in an undisclosed fashion, identified Bank of America as an "investor" on the Loan. Plaintiff does not dispute that she in default on her loan, and does not plausibly claim in the SAC that she is in default because she did not know to which entity she was required to make mortgage payments; her allegations concerning Bank of America certainly do not come close to alleging that Bank of America ever has or ever will seek to collect on the Loan in its purported role as "investor." As such, she cannot rely upon her allegations concerning Bank of America to state a plausible claim for declaratory relief. *See Bernardi v. JPMorgan Chase Bank, N.A.*, No. C-11-04543 RMW, 2012 U.S. Dist. LEXIS 1951, *5 (N.D. Cal. Jan. 6, 2012) ("[P]laintiffs [do not] allege that any third party has ever come forward attempting to enforce the debt, making plaintiffs' claim yet more implausible.").

As to the argument that the Assignment was invalid, Plaintiff has not pled sufficient facts to support the notion that even if the Assignment was invalid, that there is an actual controversy ripe for review, because Plaintiff has not alleged that more than one entity has presently sought to enforce the Loan or imminently will do so. *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). As to Plaintiff's allegations that the purported invalidity of the note prevents her from knowing who she can approach to negotiate her Loan, this argument is not even remotely plausible given that, as discussed *supra*, Plaintiff actually did negotiate the Modification on her Loan and has not alleged that she has had trouble finding a negotiating partner with regards to her Loan. Her argument that she does not know who to propound discovery upon is also implausible; she has not alleged that there are any possible contenders other than the named Defendants who might have an interest in her loan.

In sum, the SAC does not adequately plead that there is a controversy between the parties under the relevant pleading standards. Given that Plaintiff has already had one attempt to amend her complaint so as to properly state a claim for declaratory relief, the Court would this second time dismiss the claim without leave to amend. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *Davis v. Astrue*, 250 F.R.D. 476, 480 (N.D. Cal. 2008) (discretion to deny leave to amend "is particularly broad where the court has previously granted leave to amend the complaint").

### 2. Quasi Contract

The elements of a quasi-contract action for unjust enrichment are the "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). By this claim, Plaintiff alleges that Defendants attempted to become parties to her loan, but failed through the faulty assignment. Therefore, she alleges that they have been collecting her loan payments without authority. SAC ¶¶ 72. Again, though, the Court need not assess the validity of the Assignment to dispose of this claim. Plaintiff at no point in the SAC alleges that the payments she made were not properly credited to her account. Nor, as discussed above, has she plausibly alleged that there were competing entities both seeking payment from her under the Loan (or the Modification).

The Court would thus dismiss this claim with leave to amend *only* to the extent to which

Plaintiff can plausibly allege that payments she made under the Loan (or the Modification) were not applied to her account but were instead retained by at least one Defendant solely for its benefit, or, to the extent she can *plausibly* allege that there were rival claimants seeking payment under the Loan or Modification. Alleging without detail that Bank of America is an "investor" on the Loan is clearly insufficient to support a claim that Bank of America was, is, or will seek payment under the Loan.

### 3. *Violation of 15 U.S.C. § 1641(g)*

Under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g), "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." This provision of TILA did not become effective until May 20, 2009. Pub. L. No. 111-22, § 404, 123 Stat. 1632, 1658 (2009).

The FAC had alleged that the Trust acquired an interest in the Loan in 2007, and the Court dismissed Plaintiff's TILA claim on that basis, as the Trust acquired an interest in the Loan prior to the date when TILA became effective. March 1 Order at 7; FAC ¶ 28. The SAC, however, alleges that the Trust (i.e. Deutsche Bank in its role as Trustee) acquired an interest in the Loan only as of the 2011 Assignment. SAC ¶ 79. Defendants argue that Plaintiff conceded that the Trust acquired its interest in the Loan in 2007, prior to TILA's enactment, and argues that Plaintiff cannot in her SAC "backtrack from her prior admissions" as to the date the Trust acquired its interest in the Loan. Docket No. 27 at 14, 16. This argument is unavailing; the date the Trust acquired its interest in the Loan is not up to Plaintiff to "concede" - moreover, the SAC is the operative complaint before the Court and the Court would assess the instant motion to dismiss on the basis of the allegations contained therein, not on the basis of those of the FAC. Defendants then more persuasively argue that Plaintiff had been making payments to the trust since 2007, necessarily implying that the Trust had some purported interest in the Loan as of that year. *See* SAC 69; Docket No. 27 at 17.

However, Plaintiff argues that the 2011 Assignment must have had some import, and in fact Defendants do not deny as much anywhere in their briefing. Docket No. 31 at 16. If the Assignment, executed and recorded in 2011, had any import at all, then it seems that Plaintiff has properly pled a TILA claim in alleging that she was not notified of the Assignment within 30 days of whatever transfer or interest it effectuated. Defendants then argue that a TILA plaintiff can only recover actual damages resulting from a violation of the statute, and states that because Plaintiff has not alleged actual monetary damages stemming from the alleged TILA violation, her TILA claim should be dismissed. Defendants' argument as to a purported requirement that Plaintiff plead actual damages to state a claim under TILA misstates the law on a basic level, as is clear from the text of the statute, and the relevant caselaw, that a TILA plaintiff may plead either actual damages or statutory damages. 15 U.S.C. § 1640(a)(2)(A)(iv); *see Brown v. U.S. Bancorp*, CV 11-6125 CAS (PJWx), 2012 U.S. Dist. LEXIS 26226, at *14 (C.D. Cal. Feb. 27, 2012) ("the Court is satisfied that plaintiffs have sufficiently pled statutory damages, such that it is irrelevant whether they have pled actual damages. The Ninth Circuit has held that a TILA plaintiff is entitled to statutory damages even if no actual damage was suffered") (citing *In re Ferrell*, 539 F.3d 1186, 1190 (9th Cir. 2008)).

Thus the Court would deny Defendants' motion to dismiss Plaintiff's TILA claim.

### 4. *Violation of California Business & Professions Code §§ 17200, et seq.*

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because the UCL is written in the disjunctive, a business act or practice can violate any or all of its three prongs. *Berryman v. Merit Prop. Mgmt.*, 152 Cal. App. 4th 1544, 1554 (2007). A violation of virtually any local, state, or federal law can function as the predicate for a UCL claim. *Saunders v. Sup. Ct.*, 27 Cal. App. 4th 832, 838-39 (1994). Moreover, a business practice can be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003). "[A] plaintiff alleging unfair business practices under the unfair competition statutes must state with reasonable particularity the facts supporting the statutory elements of the violation." *Fortaleza v. PNC Fin. Serv. Group, Inc.*, 642 F. Supp. 2d 1012, 1019 (N.D. Cal. 2009) (internal quotations and citation omitted) (dismissing UCL claim, in part, for failing to identify which acts alleged under the UCL were attributable to which defendant(s)). Moreover, "California's UCL does not support claims for vicarious liability." *Valezquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

Defendants argue, inter alia, that Plaintiff has failed to plead that she has suffered any actual damages on account of their allegedly unfair, fraudulent or unlawful acts. Given that the Court would permit Plaintiff's TILA claim to move forward as currently pled, the Court need not address Defendants' arguments that Plaintiff fails to state a claim under the "unfair" or "unlawful" prongs of the UCL. However, Defendants also argue that Plaintiff has failed to allege that she lost money or property as a result of the alleged UCL violations, as required following Proposition 64. Docket No. 27 at 18; Cal. Bus. & Prof. Code § 17204. Plaintiff rejoins that she has alleged seven varieties of lost money and property: 1) multiple parties may seek to enforce her debt; 2) the title to her home has been clouded; 3) she has been paying the wrong party "and overpaid in interest that was overcalculated"; 4) she is unable to determine whether she has paid the right party on her Loan; 5) her credit has been damaged; 6) she filed for bankruptcy; 7) she has expended money in the form of attorney's fees and costs. SAC ¶ 120. The Court would find that none of these seven allegations plausibly allege loss of property or money such that Plaintiff's UCL claim can move forward.

Her first allegation concerns only potential future harm, not any current or past harm. Her second and fifth allegation, as noted by Defendants, would seem to have been caused by Plaintiff's admitted default on her loan, not Defendants' allegedly unlawful or unfair practices. Her fourth allegation does not allege loss of property or money. Her sixth allegation, concerning Plaintiff's bankruptcy filing, is barely discussed in the SAC, let alone linked to Defendants' conduct. Her seventh allegation, attorney's fees and costs, cannot, alone, support a UCL claim, otherwise the thrust of Proposition 64 would be undercut, as it would be rendered superfluous because every UCL plaintiff could allege such loss. Her third allegation, though, presents the closest question. Plaintiff alleges that on account of Defendants' unlawful, unfair or fraudulent acts, she has "overpaid in interest that was overcalculated." SAC ¶ 120. Perusing the Complaint, the Court would find that Plaintiff must be alluding to the fact that her Modification allegedly stated an inflated principal balance, resulting in a miscalculated monthly payment. SAC ¶¶ 41-

43. However, Plaintiff does not appear to argue that the "inconsistencies" in the Modification were unlawful. If she had intended to allege that the inconsistencies were fraudulent, she has clearly not met the heightened pleading standard of Rule 9(b). If she had intended to allege that the inconsistencies were unfair, she has only done so in a conclusory way; she does not allege that the terms of the Modification were ever misrepresented to her or that the Modification negotiations were unfair in any way. Thus, even construing the SAC in the light most favorable to the Plaintiff, namely by considering her allegations concerning the Modification's "inconsistencies" as allegations of lost money or property, Plaintiff has failed to properly connect this loss to Defendants' allegedly unfair, unlawful or fraudulent acts.

In sum, the Court would dismiss the UCL claim, but would grant leave to amend consistent with this Order.

### 5. Breach of Contract

To state a claim for breach of contract under California law, a plaintiff must allege: 1) the existence of a contract; 2) plaintiff's performance or excuse for nonperformance of the contract; 3) defendant's breach of the contract; and 4) resulting damage. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010). Moreover, "the claimant must plead, among other things, the contract either 'by its terms, set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference, or by its legal effect." *N. County Commc'ns Corp. v. Verizon Global Networks, Inc.*, 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010) (*quoting McKell v. Washington Mut., Inc.* 142 Cal. App. 4th 1457, 1489 (2006)). "In order to plead a contract by its legal effect, [a plaintiff] must allege the substance of its relevant terms." *Id.* (internal quotations omitted).

As an initial matter, Plaintiff asserts this claim against Deutsche Bank and Bank of America. However, her sole allegation against Bank of America is that the MERS website discloses Bank of America as an "investor" on the Loan; nowhere in the SAC does Plaintiff allege (or come close to alleging) that Bank of America was a party to any contract with Plaintiff. Therefore the Court would dismiss Plaintiff's breach of contract claim against Bank of America.

Plaintiff avers that Deutsche Bank "breached the Deed of Trust by failing to apply the payments made by Plaintiff in the order of priority set forth in Section 2, and this resulted in improper fees and taxes being added to the balance of the loan." SAC ¶ 127. In turn, Section 2 requires that "'all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.'" SAC ¶ 125, Exh. A. In the March 1 Order, the Court held that in order to withstand a motion to dismiss, Plaintiff's breach of contract claim required:

> additional facts pointing to when and what payments were
> misapplied under the loan, considering she has been making
> loan payments to Deutsche Bank for at least four years. Such
> added factual information is probably necessary because
> Plaintiff - as Defendants point out - is now in default on her
> loan, and her breach of contract claim requires her to allege
> that she has performed or is excused from performing under
> the contract...added factual allegations as to the timing of

Deutsche Bank's purported breach should probably be required before the Court lets this claim proceed.

The breach of contract allegations in the SAC are functionally identical to that of the FAC. Therefore, the Court would dismiss the breach of contract claim. However, the Court would permit Plaintiff one more attempt to allege breach with more specificity, given that the SAC couches the factual background of the case differently than did the FAC; Plaintiff might have assumed that incorporating such amended allegations into the breach of contract claim was sufficient to remedy the Court's concerns. While the Court would not agree, Plaintiff would be given one further opportunity to plead her contract claim with further detail, if possible, as the SAC's allegations disclose that such amendment might not be futile.

### 6. *Violations of California Civil Code § 2924*

By this claim, Plaintiff avers that Defendants never acquired a lawful interest in her loan, and therefore "are not entitled to utilize California Civil Code section 2924 et seq. (California's non-judicial foreclosure scheme) to wrongfully convert Plaintiff's Property." FAC ¶¶ 158-59. Here, for the first time in this Order, the Court must address Plaintiff's allegations that the Assignment, Substitution of Trustee, NOD and/or NOTS are invalid, as that purported invalidity is the basis for Plaintiff's Section 2924 claim. As discussed *supra* in section I of this Order, Plaintiff alleges that the Assignment is invalid for five reasons: 1) the Assignment does not disclose the principal for whom MERS is acting as agent; 2) MERS lacked ownership interest in the Note and thus cannot assert itself as the principal; 3) the MERS signatory, Roberta Wagner, lacked corporate authority from MERS to execute the Assignment; 4) Rolanda Wagner was never even an employee of MERS and lacked knowledge of the Assignment; 5) the Assignment was executed in Florida whereas MERS is "based out of" Virginia. For all of these reasons, Plaintiff alleges that the Assignment is invalid and has no legal force. SAC ¶ 25.

As to first reason offered by Plaintiff, the Assignment does appear to state that MERS is acting as nominee for American Brokers Conduit, thus the Court is puzzled by Plaintiff's assertions to the contrary. *See* SAC, Exh. A. The second reason offered by Plaintiff why the Assignment is invalid, namely that MERS lacked ownership interest in the Note and thus had no authority to transfer such interest, this issue was addressed in depth in the case of *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 271 (2011). In *Fontenot*, the Court held that MERS does not have the power in its *own* right to assign a note where it is designated in the DOT as the lender's nominee, but, in its role as nominee, MERS does have the power to assign the DOT on behalf of the lender, as the role of nominee is analogous to that of an agent. *Id.* at 271. Here, the Assignment clearly states that it is acting as nominee for American Brokers Conduit, *i.e.* the lender on the DOT. SAC, Exh. A. Thus, MERS did have the power to assign the DOT to Deutsche Bank. *See In re Mortgage Electronic Registration Systems (MERS) Litigation*, NO. 09-2119-JAT, 2011 U.S. Dist. LEXIS 117107, at *48 (D. Ariz. Oct. 3 2011). As to the third and fourth reasons, the Court would agree with Defendants that the SAC does not sufficiently allege facts to support the "robosigning" allegations Plaintiff asserts (though without using that word). *See Cerecedes v. U.S. Bankcorp*, 2011 U.S. Dist. LEXIS 75559, CV 11-219 CAS (FMOx), at *14 (C.D. Cal. July 11, 2011) ("*Twombly* require plaintiffs to set forth more than bare allegations of 'robo-signing' without any other factual support."). As to the fifth

reason, the Court cannot find such allegations to even remotely support the notion that the Assignment was invalid; Plaintiff cites no authority for the proposition that a company's employee only has the authority to enter into contracts in the same state where the company is based. In sum, the allegations in the SAC that the Assignment is invalid fail as a matter of law. As such, Plaintiff cannot rest her Section 2924 claim on such allegations.

Next, the Court must assess the legal sufficiency of Plaintiff's allegations that the Substitution of Trustee is invalid. Plaintiff contends the Substitution of Trustee was invalid either because the Assignment was invalid (which as discussed, *supra*, cannot stand), or in the alternative, because the Substitution of Trustee was executed by Deutsche Bank six days before the Assignment was executed; therefore, alleges Plaintiff, Deutsche Bank had no authority to execute the Substitution of Trustee on the day it was executed. Defendants respond that Plaintiff had previously alleged, in the FAC, that the Trust (with Deutsche Bank as trustee) had acquired an interest in the Loan as of 2007. Docket No. 27 at 12-13. As discussed above, this line of argument is unavailing to Defendants. However, Defendants also cite to the statute itself for the notion that the Substitution of Trustee, once recorded, is "conclusive evidence" of the authority of the substituted trustee. Cal. Civ. Code. 2394a(d). Moreover, the Court notes that the Substitution of Trustee, while *executed* by Deutsche Bank prior to the Assignment of interest in the note to Deutsche Bank, was *recorded* after the Assignment had taken place. While neither party has presented caselaw addressing the validity of a Substitution of Trustee executed by an entity prior to the date such entity obtained an interest in the Loan via assignment, the Court would find that given the statutory language cited by Defendants, Defendants have the better of this argument. In sum, the Court would find that Plaintiff's allegations of the invalidity of the Substitution of Trustee fail as a matter of law, and thus cannot support her Section 2924 claim.

Plaintiff then alleges that NOD is invalid. SAC ¶ 36. The NOD is executed by Default Resolution Network "Agent for the Beneficiary By: ServiceLink, its Agent." SAC, Exh. G. Plaintiff alleges that the NOD is invalid because neither Default Resolution nor ServiceLink had authority under the DOT, Assignment and/or Substitution of Trustee to execute it. SAC ¶ 132. Defendants do not address this allegation, other than to state that "the statutes expressly authorize the trustee or its agents to record the requisite notices and conduct the foreclosure sale as long as the deed of trust contains a power of sale." Docket No. 27 at 12. However, crucially, nowhere in Defendants' briefing do they argue that Default Resolution Network or Servicelink are agents of the trustee (be that trustee Deutsche Bank or Power Default Services). Nor do any of the documents Defendants submitted for judicial notice relate to this issue. In short, Defendants have not attacked Plaintiff's assertion that the NOD was executed by an entity with no interest in the Loan whatsoever, nor have Defendants argued that the allegation of an improperly executed NOD cannot support a Section 2924 claim.

While the Court would otherwise permit the Section 2924 claim to move forward, the issue of tender still prevents Plaintiff for stating a claim for relief here. In *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1154-57 (2011), the court held that a plaintiff must credibly allege that she can tender the amount due on her loan before she can challenge foreclosure proceedings. Here, Plaintiff alleges: "Not only is Plaintiff ready, willing and able to tender her obligation, but she has a steady income flow and has the ability to [sic] a reasonable payment to satisfy her obligation." SAC ¶ 55. Given that to overcome the tender bar, the allegations of

tender must be credible and unconditional, Plaintiff, who owes upwards of $600,000 on the Loan, has not alleged her ability to tender. *See Alicea v. GE Mortgage Bank*, No. C 09-00091 SBA, 2009 U.S. Dist. LEXIS 60813, at *8 (N.D. Cal. July 16, 2006). Therefore, unless Plaintiff can amend her pleading to reflect a credible unconditional tender (and the Court would inquire of Plaintiff whether this would be possible at the hearing), the Court would dismiss the Section 2924 claim with prejudice.

### C. Defendants' Motion to Strike

Defendants move to strike three portions of the SAC: 1) the allegation of "malicious" conduct on the part of Defendants (SAC ¶ 108); 2) Exhibit E to the SAC, the report of a "forensic loan audit conducted by Marie McDonnell, of McDonnell Property Analytics, Inc., a nationally renowned securitization forensic auditor[,]" (the "McDonnell Report"); and 3) Plaintiff's prayer for attorney's fees.

First, Defendants' motion to strike one use of the word "malicious" clearly does not meet the standard set forth in *Whittlestone*, discussed in section II *supra*, and Defendants' citations to inapposite cases dating from 1976 and 1967 provide no basis for the court to hold otherwise. *See* Docket No. 28 at 3 (citing *Cyrus v. Harrison*, 65 Cal.App.3d 306, 316-17 (1976) (discussing use of the word malicious in the context of a punitive damages claim, and applying California's rules of civil procedure) and *Toole v. Richardson-Merrill, Inc.*, 251 Cal.App.2d 689, 711 (1967) (discussing malice as supporting a punitive damages claim).

Second, the Court can simply refer to its findings in the March 1 Order in regards to the McDonnell report, which apply just as equally in the context of this motion:

> regarding the McDonnell Report, by the Court's ruling on the motion to dismiss, it has essentially rendered the motion to strike this exhibit moot as well. That is, the Court has found that Plaintiff's allegations as to securitization (and an "invalid" assignment), which are supported by the McDonnell Report, are insufficient to state a claim at this time, and has dismissed all causes of action premised on such allegations. Therefore, the McDonnell Report is no longer relevant to Plaintiff's case in less she can, in good faith, amend her claims consistent with this order. Thus, the Court would refrain from finding the McDonnell Report "scandalous" at this time. Moreover, the Court would probably find that Defendants' present arguments have not shown that the McDonnell Report meets the definition of "scandalous" material.

The Court would thus deny the motion to strike in regards to the single usage of the word "malicious" as to the McDonnell report.

The motion to strike the attorney's fees should also be denied. First, as noted by Plaintiff, TILA makes available attorney's fees as a remedy, and the Court would permit the TILA claim to move forward as discussed *infra*. Moreover, the Ninth Circuit recently held that a 12(f) motion may not be used to strike a prayer for attorney's fees; a 12(b)(6) motion is the appropriate

procedural vehicle, and Defendants did not so move in their 12(b)(6) motion. *See generally Whittlestone*, 618 F.3d 970 (9th Cir. 2010).

In sum, Defendants' motion to strike would be denied in its entirety.

## IV.   Conclusion

For the foregoing reasons, the Court would rule as follows: 1) dismiss without leave to amend Plaintiff's first and sixth claims; 2) dismiss with leave to amend the second, fourth and fifth claims; 3) deny the motion to dismiss the third claim; 4) deny the motion to strike as to the attorney's fees and "malicious" issues, and find that such motion is moot as to the McDonnell Report, and 5) grant Defendant's request for judicial notice.

# PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On July 5, 2012, I served the within **NOTICE OF RULING ON DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILOURE TO STATE A CLAIM FOR RELIEF AND MOTION TO STRIKE** on all interested parties in this action as follows:

[X]   by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Hazel S. Chu, Esq.
Prosper Law Group, LLP
6100 Center Drive, Suite 1050
Los Angeles, CA 90045
310/893-6200; Fax: 310/988-2930
**Attorneys for Plaintiff, ROSENTENE B. PURNELL**

[ X ]   (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.
[ ]   (BY OVERNITE EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by Overnite Express with the delivery fees provided for.
[X]   (**FEDERAL**) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 5, 2012, at Newport Beach, California.

*Kim Walsh* (signature)
Kim Walsh